# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF CALIFORNIA
# CIVIL MINUTES

| | | | |
|---|---|---|---|
| **Case Title :** | Tammy Lynn Figuera | **Case No :** <br> **Date :** <br> **Time :** | **14–21730 – A – 7** <br> 7/28/14 <br> 10:00 |
| **Matter :** | [15] – Motion/Application to Enforce 30 Day Stay, and to Recind Unlawful Eviction by CA State Court Filed by Debtor Tammy Lynn Figuera (kwis) | | **OPPOSED** |
| **Judge :** <br> **Courtroom Deputy :** <br> **Reporter :** <br> **Department :** | Michael S. McManus <br> Sarah Head <br> NOT RECORDED <br> A | | |

**APPEARANCES for :**
**Movant(s) :**
None
**Respondent(s) :**
None

MOTION was :
Granted in part
Denied in part
See final ruling below.

The court will issue a minute order.

Final Ruling: The court finds that a hearing will not be helpful to its consideration and resolution of this matter. Accordingly, it is removed from calendar for resolution without oral argument.

The motion will be granted in part and denied in part.

The hearing on this motion was continued from June 16, 2014 to allow Mr. Brar to respond to evidence submitted by the debtor. Mr. Brar has not responded to that evidence in accordance with the court's June 16, 2014 Final Ruling.

As indicated in its scheduling order, the court construes this motion as seeking relief under 11 U.S.C. § 362(k).

The debtor, Tammy Figuera, complains that Jesbir Brar violated the automatic stay when he evicted her from her home in Rocklin, California on March 4, 2014.

This case was filed on February 24, 2014. Mr. Brar admits to having evicted the debtor from the property on March 4, 2014. He argues, though, that there was no automatic stay preventing the eviction by virtue of 11 U.S.C. § 362(b)(22), which provides that:

"The filing of a petition under section 301, 302, or 303 of this title, or of an application under section 5(a)(3) of the Securities Investor Protection Act of 1970, does not operate as a stay

. . .

subject to subsection (l), under subsection (a)(3), of the continuation of any eviction, unlawful detainer action, or similar proceeding by a lessor against a debtor involving residential property in which the debtor

resides as a tenant under a lease or rental agreement and with respect to which the lessor has obtained before the date of the filing of the bankruptcy petition, a judgment for possession of such property against the debtor."

11 U.S.C. § 362(l) provides that:

"(1) Except as otherwise provided in this subsection, subsection (b)(22) shall apply on the date that is 30 days after the date on which the bankruptcy petition is filed, if the debtor files with the petition and serves upon the lessor a certification under penalty of perjury that

(A) under nonbankruptcy law applicable in the jurisdiction, there are circumstances under which the debtor would be permitted to cure the entire monetary default that gave rise to the judgment for possession, after that judgment for possession was entered; and

(B) the debtor (or an adult dependent of the debtor) has deposited with the clerk of the court, any rent that would become due during the 30–day period after the filing of the bankruptcy petition.

(2) If, within the 30–day period after the filing of the bankruptcy petition, the debtor (or an adult dependent of the debtor) complies with paragraph (1) and files with the court and serves upon the lessor a further certification under penalty of perjury that the debtor (or an adult dependent of the debtor) has cured, under nonbankruptcy law applicable in the jurisdiction, the entire monetary default that gave rise to the judgment under which possession is sought by the lessor, subsection (b)(22) shall not apply, unless ordered to apply by the court under paragraph (3).

(3)
(A) If the lessor files an objection to any certification filed by the debtor under paragraph (1) or (2), and serves such objection upon the debtor, the court shall hold a hearing within 10 days after the filing and service of such objection to determine if the certification filed by the debtor under paragraph (1) or (2) is true.

(B) If the court upholds the objection of the lessor filed under subparagraph (A)

(I) subsection (b)(22) shall apply immediately and relief from the stay provided under subsection (a)(3) shall not be required to enable the lessor to complete the process to recover full possession of the property; and

(ii) the clerk of the court shall immediately serve upon the lessor and the debtor a certified copy of the court's order upholding the lessor's objection.

(4) If a debtor, in accordance with paragraph (5), indicates on the petition that there was a judgment for possession of the residential rental property in which the debtor resides and does not file a certification under paragraph (1) or (2)

(A) subsection (b)(22) shall apply immediately upon failure to file such certification, and relief from the stay provided under subsection (a)(3) shall not be required to enable the lessor to complete the process to recover full possession of the property; and

(B) the clerk of the court shall immediately serve upon the lessor and the debtor a certified copy of the docket indicating the absence of a filed certification and the applicability of the exception to the stay under subsection (b)(22).

(5)
(A) Where a judgment for possession of residential property in which the debtor resides as a tenant under a lease or rental agreement has been obtained by the lessor, the debtor shall so indicate on the bankruptcy petition and shall provide the name and address of the lessor that obtained that pre–petition judgment on the petition and on any certification filed under this subsection.

(B) The form of certification filed with the petition, as specified in this subsection, shall provide for the debtor to certify, and the debtor shall certify

(I) whether a judgment for possession of residential rental housing in which the debtor resides has been obtained against the debtor before the date of the filing of the petition; and

(ii) whether the debtor is claiming under paragraph (1) that under nonbankruptcy law applicable in the jurisdiction, there are circumstances under which the debtor would be permitted to cure the entire monetary default that gave rise to the judgment for possession, after that judgment of possession was entered, and

has made the appropriate deposit with the court.

The standard forms (electronic and otherwise) used in a bankruptcy proceeding shall be amended to reflect the requirements of this subsection.

(D) The clerk of the court shall arrange for the prompt transmittal of the rent deposited in accordance with paragraph (1)(B) to the lessor."

Mr. Brar's contention that the appeal filed by the debtor on March 26, 2014 divests this court from jurisdiction to hear this matter is meritless because the debtor obviously has appealed nothing associated with this motion, which the court is only now adjudicating.

"The principle that a timely notice of appeal immediately transfers jurisdiction to the appellate court is a judge–made doctrine that is designed to promote judicial economy and to avoid the confusion and ineptitude resulting when two courts are dealing with the same issue at the same time. Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 58, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982); [Marino v. Classic Auto Refinishing, Inc. (In re Marino), 234 B.R. 767, 769 (B.A.P. 9th Cir. 1999)]; 20 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE paragraph 303.32[1] (3rd ed. 1999). The trial court cannot take actions "over those aspects of the case involved in the appeal." Griggs, 459 U.S. at 58, 103 S.Ct. 400.

"The focus is on whether the trial court is being asked to alter the status quo with respect to the appeal. Thus, a trial court cannot enter an order that supplements the order on appeal because such supplementation would change the status quo. McClatchy Newspapers v. Central Valley Typographical Union, 686 F.2d 731, 734–35 (9th Cir. 1982)."

Hill & Sanford, L.L.P. v. Mirzai (In re Mirzai), 236 B.R. 8, 10 (B.A.P. 9th Cir. 1999).

This motion was heard for the first time on May 5, 2014 and the court has not entered any orders on this motion.

More, the court cannot tell which order is being appealed by the March 26, 2014 notice of appeal. The court entered two orders prior to the notice of appeal and neither of them can be appealed – one is an order entered on February 24 authorizing the debtor to pay the filing fee in installments (Docket 7) and the other is an order entered on March 6 setting a hearing on a motion for recusal (Docket 19). Both orders were entered more than 14 days prior to the notice of appeal hence an appeal on March 26 of these orders would be untimely. See Fed. R. Bankr. P. 8002(a).

Thus, the court fails to see how the March 26, 2014 notice of appeal divested this court from jurisdiction to adjudicate this motion in the first instance.

Turning to the merits of the motion, 11 U.S.C. § 362(b)(22) does not apply to this case. That provision applies only to an "eviction, unlawful detainer action, or similar proceeding by a lessor against a debtor." Mr. Brar is not a lessor of the debtor. He is not a lessor of anyone. Mr. Brar purchased the property at the foreclosure sale of the property, instituted by the debtor's husband's mortgagee.

If, however, the debtor leased or rented the property from the mortgagor, Mr. Brar might have succeeded to the rights of the mortgagor/lessor if the lease predated the foreclosing mortgage. This is unlikely. In Mr. Fagundes' adversary proceeding, Adv. No. 13–2261, the exhibits to the complaint reference a deed of trust that was entered into in 2005. In a 2011 bankruptcy case, 11–24940, Ms. Figuera's schedules included no reference to a lease or rental agreement on Schedule G, the schedule of executory contracts. Hence, it appears that the lease came after the foreclosing mortgage. Thus, any lease would have been extinguished in a foreclosure by an earlier in time mortgage.

Mr. Brar, nonetheless, argues that he is in privity of contract with the debtor by virtue of the Protecting Tenants at Foreclosure Act of 2009 (PTFA). The court rejects this argument. The PTFA provides:

"(a) IN GENERAL.––In the case of any foreclosure on a federally–related mortgage loan or on any dwelling or residential real property after the date of enactment of this title, any immediate successor in interest in such property pursuant to the foreclosure shall assume such interest subject to––

(1) the provision, by such successor in interest of a notice to vacate to any bona fide tenant at least 90 days before the effective date of such notice; and

(2) the rights of any bona fide tenant, as of the date of such notice of foreclosure––

(A) under any bona fide lease entered into before the notice of foreclosure to occupy the premises until the end of the remaining term of the lease, except that a successor in interest may terminate a lease effective on the date of sale of the unit to a purchaser who will occupy the unit as a primary residence, subject to the receipt by the tenant of the 90 day notice under paragraph (1); or

(B) without a lease or with a lease terminable at will under state law, subject to the receipt by the tenant of the 90 day notice under subsection (1),

except that nothing under this section shall affect the requirements for termination of any federal or State-subsidized tenancy or of any State or local law that provides longer time periods or other additional protections for tenants.

(b) BONA FIDE LEASE OR TENANCY.--For purposes of this section, a lease or tenancy shall be considered bona fide only if

(1) the mortgagor or the child, spouse, or parent of the mortgagor under the contract is not the tenant;

(2) the lease or tenancy was the result of an arms-length transaction; and

(3) the lease or tenancy requires the receipt of rent that is not substantially less than fair market rent for the property or the unit's rent is reduced or subsidized due to a Federal, State, or local subsidy."

Pub. L. No. 111 22, § 702(a)-(b), 123 Stat. 1632, 1660 62 (2009)(emphasis added); see also Southland Home Mortgage v. Valle (In re Valle), Case No. 10-15196-LT7, WL 722388, at *1, 4 (Bankr. S.D. Cal. Feb. 16, 2011) (providing that "[t]he Act allows renters to remain in a leasehold for the later of 90 days or the end of the lease term if, among other things, they entered into a lease prior to the date of a Notice of Foreclosure,'" and it "protects tenants who enter into bona fide leases prior to a Notice of Foreclosure'").

The court will assume, because Mr. Brar asserts the applicability of PTFA, that the foreclosure on the subject property was based on a federally-related mortgage loan.

Subsections 702(a)(1) and (a)(2)(B) do not apply because Mr. Brar did not provide the debtor with the 90-day notice contemplated by Section 702(a)(1) or at least there is no evidence that such notice was ever given by Mr. Brar to the debtor. Also, Mr. Brar could not have given the 90-day notice of Section 702(a)(1) to the debtor prior to the March 4 eviction because, as Mr. Brar's counsel admitted in open court at the May 5 hearing, he did not know the identity of the occupants on the property, other than Patrick Fagundes, the debtor's husband.

This leaves Section 702(a)(2)(A), which applies only if there is a "bona fide" lease. Section 702(b) of the PTFA defines a bona fide lease by excluding leases where the spouse of the mortgagor is a tenant. Pub. L. No. 111 22, § 702(b)(1), 123 Stat. 1632, 1660 62 (2009). As Mr. Brar is well aware by now, the debtor is the spouse of the mortgagor on the loan that served as basis for the foreclosure, Patrick Fagundes.

Section 702(a)(2)(A) of the PTFA does not apply here because Mr. Brar has not proven that the lease agreement between the debtor and Patrick Fagundes is a bona fide lease for purposes of the PTFA. As Mr. Brar is asserting the PTFA as a defense, he has the burden of persuasion on each element of the PTFA defense, including that the lease agreement between the debtor and Patrick Fagundes is bona fide for purposes of the PTFA.

He has not met this burden. Mr. Brar has not established that the debtor is not a spouse of the mortgagor, Patrick Fagundes, that the lease between the debtor and Patrick Fagundes was the result of an arms-length transaction, and that the lease required rent substantially less than fair market rent for the property.

The debtor stated at the May 5 hearing that under her rental agreement with her husband she paid for the household utilities and other expenses. The amount paid monthly varied and was in the range of $600 to $1,000 a month. The court is unconvinced that such rent constitutes fair market rent for a house or part of a house in Rocklin, California. Pub. L. No. 111 22, § 702(b)(3), 123 Stat. 1632, 1660 62 (2009).

Hence, because Mr. Brar did not lease property directly to the debtor, because the lease postdates the foreclosing mortgage, and because he did not succeed to the rights of a mortgagor/lessor under PTFA, section 362(b)(22) does not apply.

Further, 11 U.S.C. § 362(c)(4)(A) provides that (I) "if a single or joint case is filed by or against a debtor who is an individual under this title, and if 2 or more single or joint cases of the debtor were pending within the

previous year but were dismissed, other than a case refiled under a chapter other than chapter 7 after dismissal under section 707(b), the stay under section (a) shall not go into effect upon the filing of the later case; and (ii) on request of a party in interest, the court shall promptly enter an order confirming that no stay is in effect."

While the debtor filed two prior cases before filing this case, Case Nos. 11–24940–13–E and 11–35879–11–E, neither of those two cases "were pending within the previous year" before the instant case was filed. Case No. 11–24940–13–E was dismissed on May 4, 2011 and Case No. 11–35879–11–E was dismissed on July 27, 2011. Thus, 11 U.S.C. § 362(c)(4)(A) is inapplicable here.

The filing of the bankruptcy petition triggered an automatic stay that was fully applicable and protected the debtor and the debtor's possession interest in the subject property.

11 U.S.C. § 362(a) provides that "Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."

Under 11 U.S.C. § 362(a)(3), the petition triggered an automatic stay that protected the debtor's possessory interest in the property, even if her possession amounted to a mere "squatter" status.

"A distinction exists between the analyses required for stay relief matters and violation of stay matters. In the former, the creditor is summarily attempting to establish a colorable claim in terms of an interest in a debtor's secured note or an interest in debtor's property. In considering the interest in debtor's property, an analysis is made as to the strength of debtor's interest vis–a–vis creditor's interest in the same property. Consequently, terms like "owner" and "squatter" appear. [Citation omitted] In the latter, the debtor is attempting to establish that the creditor is violating the automatic stay by taking some action against the debtor or against property of the estate. In this instance, the strength of one's interest is not determinative; but more importantly, if debtor or the estate has "any" interest the question becomes: is the creditor's action violative of the stay. Creditor's action may be violative even if a minimal interest, such as a squatter's or possessory interest, is held by the debtor or the estate."

Eden Place, L.L.C. v. Perl (In re Perl), Case No. CC–13–1328–KiTaD, WL 2446317, at *6 (B.A.P. 9th Cir. May 30, 2014) (citing to Di Giorgio v. Lee (In re Di Giorgio), 200 B.R. 664, 670 (C.D. Cal. 1996), vacated on mootness grounds, 134 F.3d 971 (9th Cir. 1998)).

In Perl – a case quite similar to the facts here – the court rejected the argument that a debtor–tenant has no legal or equitable interest in rented property once a judgment for possession has been entered in favor of the landlord. Perl at *7–8. "We conclude that . . . [the debtor's] physical occupation of the Residence conferred a possessory interest under California law that was protected by the automatic stay." Perl at *9.

The same is true with respect to the debtor in this case. Her physical occupation of the Rocklin property was recognized as a possessory interest under California law, which interest was protected by the automatic stay under section 362(a)(3). The eviction took place on March 4, 2014, just eight days after this case was filed on February 24. The court sees no reason why the automatic stay did not apply when the debtor was evicted from the property.

The applicability of the automatic stay is even more apparent under section 362(a)(1) and (2) because "property of the estate" is not implicated under those subsections. Rather, section 362(a)(1) and (2) protects actions taken "against the debtor" only.

This leaves the question of whether there was willful violation of the stay.

11 U.S.C. § 362(k)(1) provides that an individual injured by willful violation of the automatic stay "shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may

recover punitive damages."

The "[d]ebtors ha[ve] the burden of proof under section 362(k), which requires a showing (1) by an individual debtor of (2) injury from (3) a willful (4) violation of the stay." Harris v. Johnson (In re Harris), Case No. 10–00880–GBN, WL 3300716, at *4 (B.A.P. 9th Cir. Apr. 7, 2011) (citing to Fernandez v. G.E. Capital Mortg. Servs. (In re Fernandez), 227 B.R. 174, 180 (B.A.P. 9th Cir. 1998)).

A violation of the stay is willful when the creditor knows of the automatic stay and intentionally performs the action violating the stay. Neither good faith belief that the creditor had a right to the property, nor good faith reliance on the advice of counsel are relevant. Tsafaroff v. Taylor (In re Taylor), 884 F.2d 478, 482–83 (9th Cir. 1989); Sciarrino v. Mendoza, 201 B.R. 541, 547 (E.D. Cal. 1996).

Actions taken in violation of the automatic stay are void. Sambo's Restaurants, Inc. v. Wheeler (In re Sambo's Restaurants), Inc., 754 F.2d 811, 816 (9th Cir. 1985); O'Donnell v. Vencor Inc., 466 F.3d 1104, 1110 (9th Cir. 2006).

A creditor who has violated the automatic stay is required to reverse any collection efforts that, even though were started pre–petition, resulted in a post–petition collection. The stay requires the creditor to direct a levying officer to return or reverse post–petition collections. In re Johnson, 262 B.R. 831, 847–48 (Bankr. D. Idaho 2001). The stay obligates the creditor to maintain or restore the status quo that existed as of the petition date. Id. (quoting Franchise Tax Board v. Roberts (In re Roberts), 175 B.R. 339, 343 (B.A.P. 9th Cir. 1994)).

In determining whether and to what extent to award punitive damages, courts consider the nature of the violations, the amount of compensatory damages awarded, and the wealth of the party who has committed the violations. Prof'l Seminar Consultants, Inc. v. Sino American Tech., 727 F.2d 1470, 1473 (9th Cir. 1984). Punitive damage awards may not be grossly excessive or arbitrary. BMW of North America, Inc. v. Gore, 517 U.S. 559, 582 (1996) (holding that "we have consistently rejected the notion that the constitutional line is marked by a simple mathematical formula, even one that compares actual and potential damages to the punitive award," citing to TXO Production Corp. v. Alliance Resources Corp., 509 U.S. 443, 458 (1993)); State Farm Mut. Automobile Ins. Co. v. Campbell, 538 U.S. 408, 416 (2003) (noting that a single–digit ratio between punitive and compensatory damages will satisfy due process).

Mr. Brar obtained a judgment for possession of the property pre–petition, on September 27, 2013. By evicting the debtor from the property pursuant to that judgment on March 4, 2014, after the debtor had filed this case on February 24, 2014, Mr. Brar:

– was continuing the unlawful detainer action or proceeding commenced pre–petition against the debtor,

– was enforcing "against the debtor . . . a judgment obtained before the commencement of the case," and

– was exercising control over property of the estate, i.e., the debtor's possessory interest in the property.

Accordingly, Mr. Brar violated the automatic stay of section 362(a)(1), (a)(2), and (a)(3), when he executed on the pre–petition judgment for possession.

Further, the violation was willful because Mr. Brar was aware of the automatic stay when he evicted the debtor but nonetheless proceeded with the eviction. The debtor presented Mr. Brar or his agents with a copy of the bankruptcy petition when Mr. Brar came to evict the debtor along with all other occupants of the property. Nevertheless, Mr. Brar proceeded with the eviction. In fact, as it became apparent at the May 5 hearing on this motion, Mr. Brar's counsel instructed the Sheriff to go forward with the eviction despite the filing of the bankruptcy case.

The court also notes that Mr. Brar does not deny anywhere in his papers that he knew of the automatic stay in this case when he evicted the debtor from the property.

And, a good faith belief that 11 U.S.C. § 362(b)(22) applied is not material. Tsafaroff v. Taylor (In re Taylor), 884 F.2d 478, 482–83 (9th Cir. 1989); Sciarrino v. Mendoza, 201 B.R. 541, 547 (E.D. Cal. 1996). A violation of the stay is willful when the creditor knows of the automatic stay and intentionally performs the action violating the stay. Neither good faith belief that the creditor had a right to the property, nor good faith reliance on the advice of counsel are relevant. Id.

To the extent there is doubt that Mr. Brar knew of the bankruptcy prior to the eviction, he knew of it shortly thereafter, yet he did nothing to restore possession to the debtor when learning of the bankruptcy. Having evicted the debtor in violation of the automatic stay, the creditor had an obligation to restore the status quo.

See Eskanos & Adler, P.C. v. Leetien, 309 F.3d 1210, 1213–15 (9th Cir. 2002). That is, upon discovering that the debtor's petition predated the eviction, the creditor was required to put the debtor back in possession of her home. The creditor did not. At a minimum, this alone is a willful violation of the automatic stay.

The purpose of continuing the hearing on the motion to June 16 was to allow the debtor to produce evidence of damages resulting from the stay violation. In its May 5 ruling the court mandated that:

"The court will continue the hearing on the motion to June 16, 2014 at 10:00 a.m. The debtor shall file and serve evidence of damages resulting from the violation of the automatic stay no later than June 2, 2014. The debtor shall also file with the court no later than June 2, 2014 a certificate of service demonstrating that her evidence was served by U.S. Mail on Mr. Brar's attorney. The evidence from the debtor shall include but not be limited to declaration(s) executed under the penalty of perjury. Any reply from Mr. Brar shall be filed and served no later than June 9, 2014. Mr. Brar shall also file no later than June 9, 2014 a certificate of service evidencing that the reply was served by U.S. Mail on the debtor."

Docket 59 at 5.

The debtor filed additional papers on May 29, 2014, asking for:

– $1.825 million in "[e]conomic damages and loss,"

– $50,000 in "[n]on–economic damages,"

– $250,000 in "[p]unitive damages,"

– attorney's fees and costs,

– "an order that Brar . . . take action to set aside the eviction Judgment and Order . . . or alternatively, . . . order restoring possession to the debtor," and

– "an order in the alternative reforming the Grant Deed in favor of debtor's name forthwith with all rights of possession under a new Grant Deed to debtor and for an order quieting title in debtor's name."

Docket 61 at 5–6.

The time period for the damages purportedly incurred by the debtor is limited to the period between March 4, 2014, the date of the eviction, and April 28, 2014, the date this bankruptcy case was dismissed. The debtor is not entitled to damages after the April 28 dismissal because the writ of possession became enforceable against the debtor after that date, given the dissolution of the stay upon dismissal. See 11 U.S.C. § 362(c)(2)(B).

First, the court will deny the request for restoring possession of the property to the debtor. It is up to the state court to determine whether the debtor is entitled to possession of the property. This case was dismissed on April 28, 2014 and this court no longer has jurisdiction over anything other than adjudicating the stay violation. This court is ruling only that the enforcement of the writ of possession against the debtor – whether or not she had right to possession of the property – violated the automatic stay.

Second, it is up to the state court to determine whether setting aside its eviction judgment is warranted. Importantly, that judgment was not entered against the debtor as she was not named in the unlawful detainer action. The judgment was entered against her husband, Patrick Fagundes. "Mr. Brar could not have given the 90–day notice of Section 702(a)(1) to the debtor prior to the March 4 eviction because, as Mr. Brar's counsel admitted in open court at the May 5 hearing, he did not know the identity of the occupants on the property, other than Patrick Fagundes, the debtor's husband." Docket 59 at 4.

More important, "Mr. Brar obtained [the] judgment for possession of the property pre–petition, on September 27, 2013." Docket 59 at 5.

Entry of the judgment for possession did not violate the stay. It was only when Mr. Brar decided to enforce the writ of possession against the debtor as an unnamed occupant of the property – post-petition – that he violated the stay.

Third, the court will deny the request for "reforming the grant deed in favor of debtor's name . . . and quieting title in debtor's name." This is a motion for violation of the automatic stay. Granting any other relief goes well–beyond the relief requested in the motion. Also, the reformation of a deed and the quieting of title

require an adversary proceeding. See Fed. R. Bankr. P. 7001(2). Additionally, as mentioned above, this case was dismissed on April 28, 2014, meaning that this court no longer has jurisdiction over any causes of action pertaining to the debtor.

Fourth, the court will deny the request for attorney's fees and costs as the debtor is representing herself in this matter. The debtor is not represented by an attorney.

Pro se litigants are not entitled to attorney's fees, even when the pro se litigant is an attorney. See Elwood v. Drescher, 456 F.3d 943, 947–48 (9th Cir. 2006) (citing Kay v. Ehrler, 499 U.S. 432 (1991), which holds that pro se attorney litigants are not entitled to attorney's fees in the successful litigation of civil rights claims). Elwood has recognized that the rule in Kay has been applied to other areas, including 17 U.S.C. § 505, Rule 11, and 28 U.S.C. § 1927. Elwood at 947. As a result, Elwood has ruled "that Kay imposes a general rule that pro se litigants, attorneys or not, cannot recover statutory attorneys' fees." Id.

Fifth, the court will deny the request for $1.825 million in "[e]conomic damages and loss." The pleading filed by the debtor does not itemize any economic damages. Docket 61 at 4. The pleading refers only to "[e]xpense of moving her residence in the total sum of $32,000." Docket 61 at 4. But, the pleading does not itemize this figure.

The attachments to the pleading are not helpful either. Docket 61. The debtor has attached the following to the pleading:

– a March 28, 2014 contract for the lease of an apartment, entered into between Willow Creek Diversified, on one hand, and the debtor and Patrick Fagundes, on the other hand. The base rent is $950 a month;

– a March 9, 2014 veterinary clinic bill for $436 of which $399.76 was paid;

– a May 1, 2014 bill from DISH for $437.75, covering service at the Rocklin property ($251.73 of the bill – covering April 10, 2014 through May 9, 2014 – is subtracted; only the remainder $186.02 is due, presumably for services rendered prior to April 10);

– an April 16, 2014 garbage pick–up service bill for $122.56 from Recology Auburn Placer, covering service at the Rocklin property from April 1, 2014 through June 30, 2014;

– a March 25, 2014 water bill with a credit balance from Placer County Water Agency, covering service at the Rocklin property from January 16, 2014 through March 18, 2014 (the bill is only partially copied and submitted into the record; the court is unable to view a small portion of the right side of the bill that contains most of the figures in the bill);

– a June 2, 2014 bill from PG&E for $25.79, covering service at the Rocklin property;

– a five–page printout from someone's Citibank online bank account, listing numerous debits and deposits;

– four pages from a Citibank account statement covering the period of April 23, 2014 through May 22, 2014, listing numerous debits and deposits;

– four pages from a Citibank account statement covering the period of March 24, 2014 through April 22, 2014, listing numerous debits and deposits; and

– six pages from a Citibank account statement covering the period of February 24, 2014 through March 23, 2014, listing numerous debits and deposits.

Docket 61.

There is no explanation by the debtor about why or how the foregoing attachments represent damages resulting from Mr. Brar's violation of the automatic stay. The debtor has not explained the relationship or relevance between the foregoing expenses and her eviction from the Rocklin property on March 4, 2014.

For instance, the court is uncertain why a veterinary clinic bill should be considered as damages caused by the violation of the automatic stay. Nor does the motion explain why the court should award damages to the debtor based on the lease of an apartment by Patrick Fagundes and the debtor, when there was no stay violation as to the eviction of Mr. Fagundes. Mr. Fagundes is the debtor's husband. The debtor does not say whether and to what extent she has been actually paying rent for the apartment. The fact that the debtor was paying Patrick Fagundes rent for her to live at the Rocklin property begs the question of whether and how much she is paying for the apartment the two of them are supposedly renting.

More, the court required the debtor to submit a declaration to support her request for damages. "The evidence from the debtor shall include but not be limited to declaration(s) executed under the penalty of perjury." Docket 59 at 5.

The debtor has filed no declaration establishing the damages she has requested or the damages that are purportedly in the attachments to her pleading. Docket 59 at 5; see e.g., Fed. R. Evid. 603, 802, 901(a).

In any event, even if the court had adequate explanation of the attachments to the debtor's pleading and the attachments had been substantiated by a declaration from the debtor, the attachments are not even close to the requested $1.825 million in economic damages. The $1.825 million in economic damages will be denied.

Finally, because the debtor has not given the court evidence of the reasonable value of her use and possession of the Rocklin property, the court would have been inclined to consider her cost of replacement housing. However, the only evidence of replacement housing cost is the March 28 lease of an apartment with Patrick Fagundes. As mentioned above, such evidence is inadmissible. It is not authenticated and it is hearsay. See Fed. R. Evid. 802 & 901(a). There is no declaration curing these defects in the evidence.

And, Mr. Brar has objected to the admissibility of all of the debtor's evidence. Docket 63.

Sixth, the $50,000 in non-economic damages will be denied for the same reason the court is denying the $1.825 million in economic damages. The debtor does not explain how or why she has sustained $50,000 in non-economic damages. She states that she has suffered "[u]pset, emotional distress, nausea, vomiting, headaches, stomach pain lasting to the present . . ., grief, humiliation, mortification,[] loss of consortium with her spouse,[] nightmares, cold sweats, dizziness,[] depression and similar symptoms continuing."

The debtor has not executed a declaration under the penalty of perjury, confirming the above issues and has not explained when, how or why she came to have the foregoing symptoms.

Moreover, assuming the debtor has indeed had the above symptoms, there is no evidence, such as a medical opinion, establishing that the debtor's symptoms were caused by the March 4 eviction.

Fed. R. Evid. 701 provides: "If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:

(a) rationally based on the witness's perception;

(b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and

(c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."

As the debtor has not been qualified as an expert in the area of specialized medical knowledge, she is not qualified to render an opinion that is based on medical scientific knowledge, i.e., whether her symptoms were caused by the eviction. She is also not qualified to render other medical opinions, such as diagnosis. Depression, for instance, is a form of medical diagnosis that requires specialized knowledge by the declarant. The debtor's assertion then that she has been suffering from depression cannot be admitted as a lay opinion.

Further, Fed. R. Evid. 702 provides: "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case."

Thus, even if the debtor had been qualified as an expert, the court does not have any evidence or statements indicating the basis for her opinions. Her opinions are inadmissible under Fed. R. Evid. 701 and 702. The request for $50,000 in non-economic damages will be denied.

Seventh, the request for $250,000 in punitive damages will be denied. In determining whether and to what extent to award punitive damages, courts consider the nature of the violations, the amount of compensatory damages awarded, and the wealth of the party who has committed the violations. Provident Life & Acc. Ins. Co. v. O'Connor, Case No. 00–55657, WL 460287, at * 3 (9th Cir. Feb. 13, 2002); Prof'l Seminar Consultants, Inc. v. Sino American Tech., 727 F.2d 1470, 1473 (9th Cir. 1984).

As the court is thus far unable to award any compensatory damages due to the lack of admissible evidence from the debtor, $250,000 in punitive damages is not appropriate. Such sum is well beyond reason. A more reasonable punitive damages award – in light of the residential eviction and the lack of admissible evidence of wealth of Mr. Brar – would be $3,000.

After the June 16 hearing on the motion, the court took this matter under advisement to review additional documents filed by the debtor on June 13, just three days before the hearing on the motion. Docket 66. The court has reviewed the additional documents from the debtor. The court will deny the debtor's request for compensatory damages for the items she left at the real property upon her eviction because her bankruptcy schedules, specfically, Schedule B, lists none of the property identified in the June 13 filing. The list of items "not returned due to eviction" include, without limitation, a laptop, clothing, cookware, a coffee pot, electronics, a couch, other furniture, etc. Docket 66 at 9. Yet, the debtor's Schedule B lists none of the personal property items as to which the debtor is now seeking compensation. The only personal property listed in Schedule B is personal jewelry. The debtor is not seeking compensation for jewelry due to the eviction.

The court will also deny the request for compensatory damages based on the debtor's claim that she suffered depression due to the eviction. The only evidence of this is an unexecuted summary report of a June 6, 2014 visit by the debtor to Placer County Medical Clinic. The report states that the debtor is suffering from depression. However, the report does not reflect the cause of the debtor's depression and, specifically, does not state that the eviction was the cause of the debtor's depression.

More importantly, as noted much earlier in this ruling, the debtor's damages are limited to the period of March 4 through April 28, 2014, given that the debtor's case was dismissed on April 28. But, the exam reflected by the medical report indicates that it is based on a June 6, 2014 diagnosis of the debtor. The report then does not help the court in finding that the debtor suffered depression during the relevant period of March 4 through April 28.

Because the debtor has not given the court evidence of what was the reasonable value of her use and possession of the Rocklin property, the court is inclined to award the debtor her cost of replacement housing. The base monthly rent for the lease is $950. Given that the debtor and Mr. Fagundes are both renting the apartment, her portion of the lease payment would be 50% or $475 a month.

This division of the rent between the debtor and Mr. Fagundes is consistent with their division and sharing of expenses at the Rocklin property, where the debtor was actually paying rent to Mr. Fagundes and was paying some of the household expenses, in exchange for her right to use and possess the Rocklin property.

As the debtor entered into the lease on March 28 and her case was dismissed on April 28, one month later, the court is inclined to award the debtor $475 in replacement housing costs, in addition to the punitive damages already awarded. After the case was dismissed on April 28, the writ of possession became enforceable against the debtor, meaning that there could not have been a violation of the stay in enforcing the writ after that date.

The court will deny compensatory damages for the debtor's payment of $375 as security deposit in connection with the apartment lease agreement. Such security deposit should be eventually returned to the debtor, provided she abides to the rules of the lease and there are no defaults by the debtor as prescribed by the lease agreement. Docket 66 at 11.

The court will award $3,475 in total damages to the debtor ($3,000 in punitive damages plus $475 in compensatory damages). Such damages shall be paid by Mr. Brar to the debtor no less than seven days after entry of the order on this motion. Mr. Brar shall pay the damages to the debtor by cashier or personal check, made payable to the debtor, to be sent to the address the debtor provided Mr. Brar at the June 16 hearing on this motion.